## Rufe et al. v. Harvey et al., County Commissioners.

*Public contracts—Bids—Awards—Proposals—Accompanying check.*

1. Where an act authorizing county commissioners to award contracts for public buildings specifies certain acts which must be performed, but contains no mandatory requirements as to the deposit of certified checks with bids or as to the form in which the bid is to be submitted, and the commissioners issue specifications calling for a certified check and that the bids shall be on a form furnished, the commissioners may waive such requirements by accepting a cashier's check and a bid in proper form upon the bidder's writing paper instead of the blank furnished by the commissioners; and if it is discovered that the check was not endorsed by the bidder, he may be permitted to endorse it even after the bids are opened.

2. Such variances are in immaterial matters which the commissioners in their discretion may overlook or correct.

3. The endorsement of the check after the result of the bidding was announced was not a re-opening of negotiations with the bidder, but merely a formal matter required by the commissioners to correct an omission of something which the bidder presumably intended to do before filing his bid.

Local Act of April 4, 1870, P. L. 834, applicable to Bucks and other counties, considered.

Bill in equity for injunction. C. P. Bucks Co., Oct. T., 1925, No. 5.

*Thomas Ross,* for plaintiffs.

*Henry A. James,* County Solicitor, and *Boyer & Vanartsdalen,* for defendants.

RYAN, P. J., June 29, 1925.—The plaintiffs, who are taxpayers of the County of Bucks, seek to restrain the defendants from entering into a contract for the installation in the court-house of this county of a heating and ventilating plant, upon the ground that the said Donald R. Richards, to whom, as the lowest bidder thereon, the said commissioners have awarded the contract, did not comply with the specifications prescribed in making his bid. The answers aver that the said Donald R. Richards was the lowest bidder for said contract and that his bid was submitted in substantial conformity with the specifications.

### Findings of fact.

. . . . . . . . . . . . . . . , ,

7. The specifications provided as follows:

"4. Proposals must be submitted sealed and addressed as directed on the proposal sheets. No bid may be withdrawn for any reason whatever after it has been deposited. Bids will be deposited in County Commissioners' Office, 2nd floor, Doylestown Court House, Doylestown, Pa., and publicly opened at the time and place designated in the advertisement.

"5. All proposals must be made upon the proposal forms which accompany these specifications. Proposals which contain any omissions, erasures, alteration, additions not called for, conditional bids or irregularities of any kind, or proposals otherwise regular which are not accompanied by a certified check in the amount hereinafter called for, may be rejected as informal."

8. Eight bids or proposals for the said contract were received from as many different parties, the two lowest of which were the following: Donald R. Richards, $11,452; Alternative A, $12,152; Alternative B, $11,052; John J. Rufe & Sons, $11,955; Alternative A, $12,680; Alternative B, $12,125.

9. The proposals or bids of the said Donald R. Richards were submitted on two loose sheets of his own writing paper and letter-heads, and not on the proposal sheet prescribed and furnished by the commissioners.

10. The proposals or bids of the said Donald R. Richards were accompanied by a cashier's check of the Quakertown National Bank for $750, payable to him, but not endorsed by him, and not by a certified check.

11. The proposals or bids of the said John J. Rufe & Sons were submitted on the proposal sheet, in proper form, but rolled up in a plan of the proposed work and unsealed. Commissioner Ernest H. Harvey, after unrolling the papers and seeing that they were not sealed, rolled them up again, without the board's examining them, and George H. Kitchen, the assistant clerk of the board, sealed them. These proposals or bids were afterwards opened and considered with the others submitted. They were accompanied by a certified check for the prescribed amount.

12. After the bids were opened and tabulated and the announcement was made that the said Donald R. Richards was found to be the lowest bidder and would be awarded the contract, it was discovered that he had omitted to endorse the cashier's check which he had submitted with his proposals or bids and which was made payable to his order. His attention was called to the matter and he immediately endorsed the check, which was retained by the commissioners.

13. The said John J. Rufe & Sons afterward protested against the award of the said contract to the said Donald R. Richards.

### Discussion.

It is the contention of the plaintiffs that the proposals of Donald R. Richards failed to comply in material particulars with the requirements of the specifications which the Commissioners of the County of Bucks had prescribed, and that the said commissioners had no discretion in the premises under which they could legally entertain them. These objections to the bids are highly technical. They are that the Richards bids were not submitted on the proposal sheet furnished, although in the form prescribed, and that the check which accompanied them was not a "certified check" as required by the specifications, but a "cashier's check" in the prescribed amount of $750, which was payable to the bidder's order, but not endorsed by him until after the bids were opened and Richards was declared to be the lowest bidder. The plaintiffs rely upon the recent decision of the Supreme Court in Carl J. Harris v. City of Philadelphia et al., No. 318, January Term, 1925 [283 Pa. 496]. This decision rules the case at bar, unless the latter is distinguishable from that case. The facts in Harris v. City of Philadelphia are thus stated in the opinion of the Supreme Court: "The City of Philadelphia, through its Department of City Transit, advertised for bids for the construction of a section of the Broad Street subway, the attention of bidders being called to an ordinance of the City of Philadelphia requiring all bids to be accompanied by a certified check for 5 per centum of the total amount of the bid. Six bids were received, and when opened it was discovered the lowest was $16,749,936 and the next highest $16,863,436.75, a difference of approximately $113,000. It was found, however, that the check accompanying the lowest bid was for $835,000, or about $12,500 short of the amount necessary to make 5 per centum of the total. The bidder's attention was called to the shortage, with a request that he submit an additional check to cover the deficiency, and he was also informed the department could take no final action as to the legality of the procedure, as the matter must be referred to the city solicitor. An additional check for $25,000 was deposited the same day. The city solicitor, however, subsequently advised the director of the department that, since the bid was not accompanied by the certified check in the required amount, it could not be considered in

awarding the contract, and any negotiations with a bidder entered into after the opening of bids was illegal." Harris, a taxpayer of the city, then filed his bill and secured an injunction enjoining "the director of transit from rejecting the bid," and directing that a decree be so drawn "as to permit the director to accept the bid if, in his discretion, he believed it for the best interest of the city to do so." The court in banc, on exceptions, reversed the decree by a majority of two to one and dismissed the bill. On appeal, the court was affirmed. The conclusion of the Supreme Court, after a review of the authorities, is thus stated in the concluding paragraph of the opinion of Mr. Justice Frazier: "We, accordingly, conclude that the requirement of a deposit is not a mere technical irregularity which is subject to correction after the bids are open, in the discretion of the director, but a mandatory requirement imposed by ordinance which must be fully complied with by the bidder as a condition precedent to a consideration of his bid." In the instant case the specifications upon which the county commissioners invited bids were adopted by them in the exercise of a discretion conferred upon them by law. They have proceeded, as they must, under the Act of April 4, 1870, § 1, P. L. 834, which provides as follows: "The County Commissioners of the Counties of Bucks, . . . before making any contract for the erection of any new building or buildings, bridge or bridges, or for the alteration or addition thereto, shall, by public advertisement, printed in not less than two weekly newspapers of the county, if so many be published therein, where the contract is to be awarded, for not less than four weeks, one of which shall be published in the county town, invite sealed proposals for the same, according to specifications, which shall be written or printed in a book to be kept by the commissioners for that purpose, and kept open for the inspection of all persons for at least four weeks before the time appointed by said advertisement for the opening of said sealed proposals, and which, at the time fixed, shall be publicly opened and the contract awarded to the lowest bidder or bidders, who shall, within ten days thereafter, give security to said commissioners for the faithful performance of said contract according to said specifications: Provided, that no contract shall be awarded by county commissioners until the same, with the sureties for its faithful performance, shall be approved by one of the judges of the Court of Common Pleas of the proper county." It will be noted that there are here no mandatory requirements as to the deposit of a certified check with the bid or as to the form in which the bid is to be submitted. The advertisement for bids, the receipt and public opening of "sealed bids," the award to the lowest bidder, and the security for the execution of the contract with the approval of one of the judges of the Court of Common Pleas of the county, are prescribed by the statute and are mandatory. Other terms and specifications are impliedly left to the discretion of the county commissioners. The particulars in which the successful bidder here is alleged to have been in default are but minor irregularities which could be waived or corrected by the commissioners in their discretion and not mandatory statutory requirements. The acceptance of a cashier's check in the required amount, instead of a certified check, and of a bid in proper form upon writing paper with letter-heads instead of a blank furnished for the purpose, waived no material requirement of the specifications. These variances from the letter of the specifications are clearly within the "irregularities of any kind" referred to in specification 5, which, while grounds upon which the bid might be rejected as informal, were variances in immaterial matters, which the commissioners, in their discretion, might overlook or correct. The endorsement of the check after the result of the bidding was announced was not a reopen-

ing of negotiations with the bidder, but merely a formal matter required by the commissioners to correct an omission of something which the defendant, Donald R. Richards, presumedly intended to do before filing his bid. This case is within the rulings in Smith *v.* The City, 2 Brewster, 443, and Zimmerman *v.* Miller, 237 Pa. 616. We have, therefore, reached the following

*Conclusions of law.*

1. That the said Donald R. Richards's bid was legal, and, as it was the lowest bid submitted, he was entitled to be awarded the contract with the Commissioners of the County of Bucks for the furnishing and installing of a steam heating and ventilating plant in the court-house according to the prescribed specifications.

2. That the plaintiffs are not entitled to the relief prayed for.

3. That the injunction must be dissolved and the bill dismissed, at the costs of the plaintiffs.

And now, to wit, June 29, 1925, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows: The injunction is dissolved and the bill is dismissed, at the costs of the plaintiffs. Let the prothonotary enter a decree *nisi* and forthwith give notice to the parties or their counsel of the filing of this opinion and the entering of the decree *nisi.*

From Calvin S. Boyer, Doylestown, Pa.